IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANNA DRAGICEVICH,

    Plaintiff,                                    Case No. 23-cv-15641

v.

SKECHERS USA, INC.,

    Defendant.

## COMPLAINT

Plaintiff Anna Dragicevich ("Plaintiff"), by and through her attorneys, alleges the following against Defendant Skechers USA, Inc. ("Defendant"):

## INTRODUCTION

1. This is an action for age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §623 (Count I), retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e-3(a) (Count II), unpaid wages in violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/2 (Count III), unlawful deduction from final compensation in violation of the IWPCA, 820 ILCS 115/9 (Count IV), retaliation in violation of the IWPCA, 820 ILCS 115/14 (Count V), and breach of contract (Count VI), promissory estoppel (Count VII), and unjust enrichment (Count VIII) in violation of Illinois common law.

## JURISDICTION AND VENUE

2. Jurisdiction is based on 28 U.S.C. §1331 and 1343, and principles of pendant and supplemental jurisdiction under 28 U.S.C. §1367.

3. Venue is proper in the Court pursuant to 28 U.S.C. §1391(b)(2) because the unlawful employment practices alleged in this Complaint occurred in the Northern District of Illinois.

### THE PARTIES

4. Plaintiff Anna Dragicevich, a resident of Lake County, Illinois, is a 61-year-old woman who was employed by Defendant Skechers USA, Inc. as a Key Account Executive from January 2014 until her termination on May 19, 2023.

5. Defendant Skechers USA, Inc., the third largest footwear brand in the United States, is a multinational company headquartered in Manhattan Beach, California that designs and markets footwear and apparel for men, women and children. Its products are sold through wholesale distribution to department and specialty stores, athletic and independent retailers, and e-commerce retailers, and directly to consumers through Skechers' brick and mortar and digital stores.[1]

### FACTUAL ALLEGATIONS

**Plaintiff's Employment Background and Complaints of Discrimination**

6. Plaintiff, an experienced salesperson, was hired by Defendant as a Key Account Executive in January 2014. She had previously worked for Defendant as a territory manager from 2006 through 2011 and was recruited by Defendant to return in 2014 based on her strong performance and outstanding reputation within the industry.

7. As a Key Account Executive, Plaintiff managed Defendant's three key accounts, Shoe Carnival, Famous Footwear and Kohl's, and was an exceptional performer by every metric, earning consistently high performance reviews and accolades from Defendant's leadership and her

---

[1] Form 10-K; Wikipedia.

2

managing accounts. She never received any complaints about her management of these accounts, nor was she ever informed that her performance was deficient in any way.

8. In February 2023, Plaintiff complained to Defendant's Vice President of Human Resources that Robert Gigante, one of Defendant's Vice Presidents, had offended her in front of a national sales manager by telling her to "shut up, bitch." Plaintiff told Human Resources that she had reported this incident to her supervisor, Christina Gigante (the offender's daughter) at the time, but that Ms. Gigante's only response was that her father was simply "old school" and "didn't like strong women who were good at their jobs." Plaintiff also reported to Human Resources that Ms. Gigante had failed to escalate her concerns about this sexist conduct and instead began retaliating against Plaintiff, frequently berating, diminishing, and yelling at her.

9. Upon information and belief, Defendant did not take any action to address Plaintiff's February 2023 complaint of sexist and retaliatory conduct.

**Plaintiff's Alleged "Job Elimination" and Subsequent Replacement**

10. On May 18, 2023, Plaintiff was informed that her position was being eliminated due to a claimed "restructuring." According to Defendant's Employee Handbook, the "factors considered in determining the layoff" were supposed to be the employees' "job knowledge, skill, performance as indicated in the most recent performance evaluation and seniority. If all of these factors are equal, seniority will be the determining factor."

11. Plaintiff, the oldest member of her team, was the only person on her team selected for termination despite the fact that her tenure, strong performance, and proven track record exceeded all of her team members, and none of the accounts that she had managed so successfully were going away.

12. Shortly before Plaintiff's position was "eliminated," Dan Sullivan, one of Defendant's Vice Presidents, openly told a group of his employees that Defendant was attempting to "go younger" with its workforce.

13. To this end, all of Plaintiff's accounts were reassigned after her termination to two much younger colleagues, both in their 30s, with far lesser qualifications. The first of these colleagues, Joshua Olkes (33), the only other member of the team with experience managing key accounts, had shorter tenure, and much less experience than Plaintiff. The second colleague, Jessica Weakley Anspach (38), was a territory manager with almost no experience managing large accounts and was subordinate to Plaintiff before she was promoted to assume Plaintiff's role.

**Defendant's Failure to Pay Earned Commissions**

14. At all times relevant to the Complaint, Plaintiff was subject to a written compensation plan dated January 30, 2023 which entitled her to a commission rate of 1.5% on all sales made by her. Commissions were due within 30 days after shipping. The last commission payment Plaintiff received was in April 2023 for March shipments.

15. As of Plaintiff's May 18, 2023 termination, she had booked $6,137,144 million in sales through November 2023. Based on her 1.5% commission rate, her earned commissions on these sales total $92,057.

16. After Plaintiff's termination, she was informed that the only commissions Defendant would pay her were either 50% of pending orders, or delayed payment of 100% until "120 days after the final shipment." Further, Defendant informed Plaintiff that it would only pay commissions under either of these terms – both of which were less favorable than what she was entitled to --- if she agreed to forego her right to any further commissions. When Plaintiff refused

4

to accept these less favorable commission terms, Defendant refused to pay her any of her earned commissions.

17. In addition to refusing to pay Plaintiff for commissions on deals closed since her termination, Defendant also deducted from her final paycheck $6,899.58 for commissions earned in April 2023 while she was still employed.

18. On numerous occasions since her May 18, 2023 termination, Plaintiff has demanded payment of her earned commissions and complained to Defendant that continued failure to pay such commissions is a violation of the IWPCA.

19. Plaintiff is currently owed $92,057 in earned commissions on April–November 2023 sales.

## PROCEDURAL REQUIREMENTS

20. Plaintiff filed a timely charge with the Equal Employment Opportunity Commission ("EEOC"), attached hereto as Exhibit A ("Charge"), which encompasses the allegations contained in this Complaint.

21. More than 60 days have elapsed since the filing of Plaintiff's Charge, as required for the filing of a claim under the ADEA. 29 C.F.R. § 1626.7 (a).

22. The EEOC issued a Notice of Right to Sue, attached hereto as Exhibit B, which was received on October 30, 2023. This Complaint is being filed within 90-days of Plaintiff's receipt of the EEOC's Notice of Right to Sue, as required for the filing of a claim under the retaliation provisions of Title VII. Accordingly, Plaintiff has met all procedural prerequisites to bringing the present action.

## COUNT I
## AGE DISCRIMINATION
## IN VIOLATION OF THE ADEA
## 29 U.S.C. §623

23. Plaintiff realleges and incorporates by reference the allegations set forth above as though fully stated herein.

24. The Age Discrimination in Employment Act prohibits an employer from taking adverse employment actions against an employee on the basis of age. 29 U.S.C. §623(a)(1).

25. Shortly before Plaintiff's position was "eliminated," Dan Sullivan, one of Defendant's Vice Presidents, openly told a group of his employees that Defendant was attempting to "go younger" with its workforce.

26. Plaintiff was the oldest person on her team selected for termination despite the fact that her tenure, strong performance, and proven track record exceeded all of her team members, and none of the accounts that she had managed so successfully were going away.

27. All of Plaintiff's accounts were subsequently reassigned to two much younger colleagues, both in their 30s, with far lesser qualifications. *See supra* Para. 10.

28. Defendant has repeatedly targeted older workers for position elimination in recent years and replaced them with younger workers. Of the four other employees who were laid off along with Plaintiff in this latest layoff, all of them were in their 50s and 60s. Similarly, in Defendant's last round of layoffs, all of the eliminated employees were in their 50s and 60s and, like Plaintiff, their work was also reassigned to younger employees. No employees under 50 were affected in either this round of layoffs or the last.

29. Defendant willfully engaged in the discriminatory conduct described herein.

30. As a result of Defendant's unlawful discriminatory conduct, Plaintiff has suffered damages.

**COUNT II**
**RETALIATION**
**IN VIOLATION OF TITLE VII**
**42 U.S.C. §2000e-3(a)**

31. Plaintiff realleges and incorporates by reference the allegations set forth above as though fully stated herein.

32. Title VII prohibits an employer from retaliating against an employee for engaging in statutorily protected activity. 42 U.S.C. §2000e-3(a).

33. Plaintiff's February 2023 complaints to Human Resources about Vice President Gigante's sexist comments and subsequent retaliatory treatment by her supervisor for her earlier complaints about such comments constitute legally protected activity.

34. Defendant terminated Plaintiff on May 18, 2023 in retaliation for engaging in statutorily protected activity, in violation of the anti-retaliation provisions of Title VII. 42 U.S.C. §2000e-3(a).

35. Defendant engaged in the retaliatory conduct described herein with malice or reckless indifference to Plaintiff's federally protected rights.

36. As a result of Defendant's unlawful retaliatory conduct, Plaintiff has suffered pecuniary and emotional damages.

**COUNT III**
**UNPAID WAGES IN VIOLATION OF THE IWPCA**
**820 ILCS 115/2**

37. Plaintiff realleges and incorporates by reference the allegations set forth above as though fully stated herein.

38. The IWPCA requires an employer to pay "the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly

scheduled payday for such employee." 820 ILCS 115/5. "Earned commissions" are specifically included as "final compensation" that is due to employees upon final separation. 820 ILCS 115/2.

39. In addition to recovery of unpaid final compensation, the IWPCA authorizes a 5% penalty per month "for each month following the date of payment during which such underpayments remain unpaid. 820 ILCS 15/14.

40. Plaintiff was entitled to commissions for $6,137,144 million in sales booked by her and shipped between April-November 2023. Based on her 1.5% commission rate, her earned commissions total $92,057.

41. Defendant has failed to pay Plaintiff her earned commissions, as required by the IWPCA.

42. As a result of Defendant's failure to pay Plaintiff her earned commissions when due, Plaintiff has suffered damages.

### COUNT IV
### UNLAWFUL DEDUCTION
### IN VIOLATION OF THE IWPCA
### 820 ILCS 115/9

43. Plaintiff realleges and incorporates by reference the allegations set forth above as though fully stated herein.

44. The IWPCA prohibits an employer from making deductions from wages or final compensation unless such deductions fall into certain limited categories or are "made with the express written consent of the employee, given freely at the time the deduction is made." 820 ILCS 115/9.

45. Defendant made an unlawful deduction from Plaintiff's final paycheck for $6,899.58 in commissions earned in April 2023 while she was still employed.

8

46. This deduction did not fall into any of the limited categories allowed by the IWPCA, nor was it "made with the express written consent of the employee, given freely at the time the deduction is made." Indeed, Plaintiff was not even made aware of this deduction until she happened to check her ADP statement, nor was she ever given any explanation for it.

47. As a result of Defendant's unlawful deduction from Plaintiff's final paycheck in violation of the IWPCA, Plaintiff has suffered damages.

**COUNT V**
**RETALIATION IN VIOLATION OF THE IWPCA**
**820 ILCS 115/14**

48. Plaintiff realleges and incorporates by reference the allegations set forth above as though fully stated herein.

49. The IWPCA prohibits an employer from retaliating against an employee who "has made a complaint to his or her employer, … that he or she has not been paid in accordance with the provisions of this Act." 820 ILCS 115/14(c).

50. An employer who violates the IWPCA's retaliation prohibition "is guilty, upon conviction, of a Class C misdemeanor." 820 ILCS 115/14(c). In addition, "An employee who has been unlawfully retaliated against shall be entitled to recover . . . all legal and equitable relief as may be appropriate." *Id.*

51. Plaintiff's complaints to Defendant alleging that its failure to pay her earned commissions constitutes protected activity.

52. Defendant unlawfully deducted an earned commission payment from Plaintiff's final paycheck and continues to refuse to pay Plaintiff her remaining earned commissions despite numerous requests, in retaliation for engaging in protected activity.

53. As a result of Defendant's unlawful retaliation, Plaintiff has suffered damages.

## COUNT VI
## BREACH OF CONTRACT

54. Plaintiff realleges and incorporates by reference the allegations set forth above as though fully stated herein.

55. At all times relevant to the allegations in this Complaint, Defendant had a written policy prescribing the "factors considered in determining the layoff." The factors required to be applied were the employees' "job knowledge, skill, performance as indicated in the most recent performance evaluation and seniority." The written policy stated further that "[i]f all of these factors are equal, seniority will be the determining factor."

56. Plaintiff was the only person on her team selected for termination despite the fact that her tenure, strong performance, and proven track record exceeded all of her team members.

57. By selecting Plaintiff for layoff instead of lesser qualified younger peers, Defendant breached its contractual promise to apply it written criteria required for "determining the layoff."

58. At all times relevant to the Complaint, Plaintiff was subject to a written contract which entitled her to a commission rate of 1.5% on all sales made by her. Commissions were due within 30 days after shipping.

59. Defendant breached its contract by refusing to pay Plaintiff her earned commissions.

60. As a result of Defendant's breach of these two contracts, Plaintiff has suffered damages.

## COUNT VII
## PROMISSORY ESTOPPEL

61. Plaintiff realleges and incorporates by reference the allegations set forth above as though fully stated herein.

62. Defendant's communications and conduct were unambiguous and clear that Plaintiff would be paid commissions at a rate of 1.5% for all sales completed by her during her employment, and that such commissions would be paid within 30 days of shipment.

63. Plaintiff reasonably and foreseeably relied on Defendant's communications and conduct and worked extremely hard to book $6,137,144 million in sales for which she expected a 1.5% commission.

64. Defendant breached its promise to Plaintiff by refusing to pay her earned commissions.

65. As a result of her detrimental reliance on Defendant's promises, Plaintiff has suffered damages.

## COUNT VIII
## UNJUST ENRICHMENT

66. Plaintiff realleges and incorporates by reference the allegations set forth above as though fully stated herein.

67. Plaintiff performed services for Defendant, including closing multiple deals which generated significant revenue for Defendant.

68. Defendant failed to compensate Plaintiff for her work, keeping all the revenue for itself.

69. Defendant's retention of the benefits of Plaintiff's services without compensating her constitutes an unjust enrichment which violates fundamental principles of justice, equity, and good conscience.

70. As a result of Defendant's conduct, Plaintiff has suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A. Enter a judgment that the conduct of the Defendant alleged herein violates the laws of the United States and the State of Illinois;

B. Award Plaintiff all back pay, front pay, commissions, pre-judgment interest, liquidated damages, penalties, and any other remuneration to which she would have been entitled but for Defendant's unlawful conduct;

C. Award Plaintiff compensatory and punitive damages for violations of Title VII;

D. Award Plaintiff the costs of this action, including reasonable attorneys' fees, expert fees, and any other costs reasonably incurred in the litigation of this matter;

E. Award Plaintiff such other and further equitable, injunctive and legal relief as this Court finds necessary and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues of fact and damages triable in this action.

Respectfully submitted,

ANNA DRAGICEVICH

By     *s/Brenda H. Feis*
            One of Her Attorneys

Brenda H. Feis
Elisabeth G. Mustoe
FEIS GOLDY LLC
800 N. Michigan Ave.
Suite 3602
Chicago, IL  60611
(312) 523-2200
bfeis@feisgoldy.com
emustoe@feisgoldy.com

November 3, 2023