# EXHIBIT A

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br>440-2023-08455 |
|---|---|---|

_____ and EEOC
State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.)<br>**Anna Dragicevich** | Home Phone (Incl. Area Code)<br>**(847) 431-8008** | Date of Birth<br>**Feb. 7, 1962** |
|---|---|---|

| Street Address<br>**21851 W. Riviera Court** | City, State and ZIP Code<br>**Mundelein, IL 60060** |
|---|---|

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>**Skechers USA, Inc.** | No. Employees, Members<br>**500+** | Phone No. (Include Area Code)<br>**(310) 310-3100** |
|---|---|---|

| Street Address<br>**225 S. Sepulveda Blvd.** | City, State and ZIP Code<br>**Manhattan Beach, CA 90266** |
|---|---|

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|

| DISCRIMINATION BASED ON (Check appropriate box(es).)<br>☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN<br>☒ RETALIATION ☒ AGE ☐ DISABILITY ☐ GENETIC INFORMATION<br>☐ OTHER (Specify) | DATE(S) DISCRIMINATION TOOK PLACE<br>Earliest       Latest<br>**May 19, 2023**<br>☐ CONTINUING ACTION |
|---|---|

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**See attached for details.**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |
| 7/19/23          *Anna Dragicevich*<br>Date          Charging Party Signature | |

Anna Dragicevich v. Skechers USA, Inc.
EEOC Charge
Page 1

I.     **FACTUAL BACKGROUND**

Charging Party Anna Dragicevich (age 61) was employed by Respondent Skechers USA, Inc. as a Key Account Executive from January 2014 until her termination on May 19, 2023. She had previously worked for Respondent as a territory manager from 2006 through 2011 and was recruited by Respondent to return in 2014 based on her strong performance and outstanding reputation within the industry.

As a Key Account Executive, Charging Party managed Respondent's three largest accounts, Shoe Carnival, Famous Footwear and Kohl's, and was an exceptional performer by every metric, earning consistently high performance reviews and accolades from Respondent's leadership and her managing accounts. She never received any complaints about her management of these accounts, nor was she ever informed that her performance was deficient in any way.

In February 2023, Charging Party complained to Respondent's Vice President of Human Resources that Robert Gigante, one of Respondent's Vice Presidents, had offended her in front of a national sales manager by telling her to "shut up, bitch." Charging Party told HR that she had reported this incident to her supervisor, Cristina Gigante (the offender's daughter) at the time, but that Ms. Gigante's only response was that her father was simply "old school" and "didn't like strong women who were good at their jobs." Ms. Gigante did not escalate Charging Party's concerns about this sexist conduct and instead began retaliating against Charging Party, frequently berating, diminishing, and yelling at her. Respondent did not take any action to address Charging Party's February 2023 complaint.

On May 18, 2023, Charging Party was informed that her position was being eliminated due to a claimed "restructuring." According to Respondent's Employee Handbook, the "factors considered in determining the layoff" will be the employees' "job knowledge, skill, performance as indicated in the most recent performance evaluation and seniority. If all of these factors are equal, seniority will be the determining factor." (p. 39). Charging Party, the oldest member of her team, was the only person on her team selected for termination despite the fact that her tenure, strong performance, and proven track record exceeded all of her team members, and none of the accounts that she had managed so successfully were going away.

II.     **AGE DISCRIMINATION**

There is compelling evidence that Charging Party was terminated because of her age. Shortly before Charging Party's position was "eliminated," Dan Sullivan, one of Respondent's Vice Presidents, openly told a group of his employees that Respondent was attempting to "go younger" with its workforce. To this end, all of Charging Party's accounts were subsequently reassigned to two much younger colleagues, both in their 30s, with far lesser qualifications, even though she was told that her position had been "eliminated" and the Handbook's criteria for "determining the layoff" were ignored. The first of these colleagues, ▮▮▮▮▮▮▮ (33), the only other member of the team with experience managing key accounts, had shorter tenure, and much less experience than Charging Party. The second colleague, ▮▮▮▮▮▮▮▮▮▮▮▮ (38), was

a territory manager with almost no experience managing large accounts and was subordinate to Charging Party before she was promoted to assume Charging Party's role.

Charging Party's experience as an older employee in Respondent's workforce is far from unique. Older workers have been repeatedly targeted for position elimination in recent years and replaced by younger workers. Of the four other employees who were laid off along with Charging Party in this latest layoff, all of them were in their 50s and 60s. Similarly, in Respondent's last round of layoffs, all of the eliminated employees were in their 50s and 60s and, like Charging Party, their work was also reassigned to younger employees. No employees under 50 were affected in either this round of layoffs or the last.

The law is clear that "[t]he retention of younger employees who take on the dismissed employee's responsibilities 'is nothing more than a demonstration of more favorable treatment.'" *Filar v. Bd. of Educ. of City of Chi.*, 526 F.3d 1054, 1060 (7th Cir. 2008). *See also Wichmann v. Board of Trustees of Southern Illinois University*, 180 F.3d 791, 802 (7th Cir. 1999); *Brown v. DS Services of America, Inc.*, 246 F.Supp.3d 1206, 1219 (N.D. Ill. 2017) (majority of the plaintiff's job duties were absorbed by a significantly younger employee who was not obviously more qualified). Based on the evidence that Charging Party's responsibilities were assumed by younger, less qualified employees, it can reasonably be inferred that she was terminated based on her age.

III. RETALIATION

Charging Party also has claims of retaliation based on the fact that she was terminated just three months after raising concerns about sexist conduct by one of Respondent's senior leaders and the retaliatory harassment she experienced after she reported it, i.e., protected activity. Rather than treat her concerns with the seriousness they deserved, Respondent did not conduct any investigation into her complaints, nor did it discipline the wrongdoers in any way. Instead, Respondent terminated Charging Party under suspicious circumstances just three months later. The law is clear in the Seventh Circuit that causation can be established in retaliation cases by circumstantial evidence such as "suspicious timing." *See, e.g., Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018); *Majors v. General Elec. Co.*, 714 F.3d 527, 537 (7th Cir. 2013) ("Closeness in time between the protected activity and the adverse employment action is evidence of the causal link between the two events.").